# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| D James Hadel and Robert Dalsin, as Fiduciaries of the NATIONAL ROOFING INDUSTRY PENSION PLAN; James Hadel and John Plescia, as Fiduciaries of the NATIONAL ROOFERS & EMPLOYERS UNION HEALTH & WELFARE FUND,<br><br>    Plaintiffs,<br><br>  vs.<br><br>WILLIS ROOF CONSULTING, INC., a Nevada Corporation; JOSEPH A. WILLIS, individually and as Trustee of the Joemar Irrevocable Trust, as Trustee under an Agreement Dated June 24, 1997, and as Trustee of the Joseph Arthur Willis Separate Property Trust; MARIE E. WILLIS, individually, and as Trustee of the Willis J & M 1990 Living Trust Agreement; JOHN DOES I–XX; and ROE ENTITIES I–XX,<br><br>    Defendants. | Case No.: 2:06-cv-01032-RLH-RJJ<br><br>**O R D E R**<br><br>(Motion to Strike–#46) |

   Before the Court are the National Roofing Industry Pension Plan's and the National Roofers & Employers Union Health & Welfare Fund's ("Trusts") **Motion to Strike Defenses** (#46), filed July 9, 2008. The Court has also considered Willis Roof Consulting, Inc.'s ("Willis Roof") Opposition (#54), filed August 5, 2008, and the Trusts' reply (#60), filed August 19, 2008.

1

**BACKGROUND**

Plaintiffs are the trustees of two employee benefit trust funds. The Trusts were created pursuant to section 302(c) of the Labor-Management Relations Act of 1947. 29 U.S.C. § 186(c) (2006). Under the Act, employers who have entered into collective bargaining agreements with labor unions deposit funds for employee benefits into various trust accounts.

Defendant Willis Roof provides roofing services to high-volume homebuilders in the greater Las Vegas area. Marie Willis is president of the company and Joseph Willis is the secretary/treasurer.

Although not a party to this action, the other entity that figures prominently in this dispute is the United Union of Roofers, Waterproofers, and Allied Workers Local #162 ("Local #162" or the "Union"). Local #162 is a labor organization that represents employees in the roofing industry in Southern Nevada.

**I.    The 1999 Agreement and 2001 Addendum**

In October 1999, Local #162 and Willis Roof entered into a written collective bargaining agreement ("1999 Agreement") pursuant to section 8(f) of the National Labor Relations Act, 29 U.S.C. § 158(f). The Trusts were third-party beneficiaries to this agreement. Under the agreement, Willis Roof was to make employee benefit contributions to the Trusts for a period of four years.

In 2001, the parties executed an addendum ("2001 Addendum") which, according to them, extended the 1999 Agreement for thirteen months—through October 31, 2004. The 2001 Addendum also established that after October 31, 2004, the collective bargaining agreement would be automatically renewed each year if neither Willis Roof nor the Union terminated it not more than 90 days and not less than 60 days prior to its expiration. This agreement remained in place through at least October 31, 2005. On that date, Willis Roof alleges that the 1999 Agreement "expired without renewal." (Dkt. #55, Opp'n to Mot. for Permanent Inj., Ex. A, ("Willis Decl.") ¶ 4.) Willis Roof further claims it made all of the required contributions to the Trusts from the

execution of the 1999 Agreement until October 31, 2005. (*Id.*) The Trusts dispute both of these claims.

## II.     The 2005–06 Negotiations

In 2005, the Union and Willis Roof began negotiating the terms of a new collective bargaining agreement. According to Willis Roof, the parties never reached an agreement. Willis Roof alleges that in January 2006, it expressed to the Union its dissatisfaction with the negotiations. The company specifically alleges the parties failed to reach an agreement on several major issues, including subcontracting rights, the duration of the proposed agreement, and the method of calculating wages. (*Id.* ¶¶ 7–10.) Willis Roof further claims that in January 2006, it informed Union representatives of its belief that it had not agreed to a collective bargaining agreement and that it had no intention of doing so in the future.

## III.    Administrative and Judicial Proceedings

On June 8, 2006, the Union filed an unfair labor practice charge before the National Labor Relations Board ("NLRB"), alleging that it had reached a new collective bargaining agreement with Willis Roof on or about December 29, 2005, and that Willis Roof had improperly refused to recognize the agreement. *See Willis Roof Consulting*, 349 N.L.R.B. No. 24 (Jan. 31, 2007). The NLRB initially dismissed the charge because the draft agreement did not memorialize a meeting of the parties' minds. The Union appealed the dismissal, and the NLRB ultimately issued a complaint. Willis Roof failed to answer the complaint, and on January 31, 2007, the NLRB entered a default order against the company (the "Default Order"). *Id.* The Ninth Circuit enforced the Default Order on October 25, 2007. *NLRB v. Willis Roof Consulting*, No. 07-72111.

The NLRB Default Order deemed the allegations in the complaint admitted, and found that (1) on or about December 29, 2005, the Union and Willis Roof reached a complete agreement on terms of employment to be incorporated in a collective bargaining agreement (the "2005–06 Agreement"); (2) the agreement extended from November 1, 2005, to December 31, 2006; and (3) Willis Roof was obligated to make fringe benefit contributions for the term of the

2005 Agreement. *Willis Roof Consulting*, 349 NLRB No. 24, at 1–3. The Default Order did not identify a particular draft of the agreement it intended to enforce; nor did it identify agreement terms specifying the amounts Willis Roof was obligated to pay to the Trusts. *See id.*

On August 23, 2006, the Trusts filed a complaint before this Court alleging that Willis Roof breached its contractual and fiduciary duties by failing to make payments under the collective bargaining agreement. The Trusts claim a valid collective bargaining agreement was effective from October 1999 to the present. The Trusts also request an order compelling Willis Roof to deliver documents and reports relating to the collective bargaining agreement, and they seek recovery for future audit costs relating to Willis Roof's payment records. On July 12, 2007, Willis Roof filed an answer to the Complaint in which it denied the Trusts' factual assertions and asserted eleven affirmative defenses. On July 9, 2008, the Trusts requested that the Court strike all of Willis Roof's affirmative defenses pursuant to Rule 12(f) or 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Court denies the Trusts' Motion to Strike.

**DISCUSSION**

**I.      Jurisdiction**

The Trusts contend this Court is bound by the NLRB's determination that the parties entered into a collective bargaining agreement that ran from November 1, 2005, to December 31, 2006. This claim is incorrect. Section 301 of the Labor-Management Relations Act grants federal district courts jurisdiction to hear cases involving private labor agreements. 29 U.S.C. § 185(a). The Court recognizes, however, that its jurisdiction is not exclusive. The concurrent jurisdiction of courts and the NLRB requires courts "to defer, when on close examination, section 301 cases fall within the NLRB's primary jurisdiction." *United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus., Steamfitters, & Refrigeration Union, Local 342 v. Valley Eng'rs*, 975 F.2d 611, 614 (9th Cir. 1992). Because of its "superior expertise" regarding matters of national labor policy, the NLRB has primary jurisdiction over representational issues. *Smith v. Evening News Ass'n*, 371 U.S. 195, 197 (1962); *Valley Eng'rs*,

975 F.2d at 613. If the issue is primarily contractual, however, courts need not defer to the NLRB because they "are still the principal sources of contract interpretation." *Litton Fin. Printing Div.v. NLRB*, 501 U.S. 190, 202 (1991).

The issues before this Court are whether Willis Roof complied with the terms of the original collective bargaining agreement and whether Willis Roof entered into a second collective bargaining agreement with the Union in late 2005 or early 2006. These issues are purely contractual. As such, the Court is not obligated to defer to the NLRB's decision, and it adjudicate this dispute accordingly.

## II. Affirmative Defenses

Although the Ninth Circuit has not expressly indicated when it is appropriate to strike affirmative defenses, numerous other courts have done so. It is well-settled that motions to strike affirmative defenses are not favored in federal courts. *See, e.g., Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1400 (7th Cir. 1991). An affirmative defense should not be stricken unless it is certain the plaintiff would succeed on his claim despite any facts that could be asserted to support the affirmative defense. *See, e.g., id.* Because courts strike affirmative defenses only when clearly warranted by the facts, motions to strike should be denied if "substantial questions of fact appear at the pleading stage." *Shenandoah Life Ins. Co. v. Hawes*, 37 F.R.D. 526, 530 (E.D.N.C. 1965); *see also SEC v. Gulf & W. Indus., Inc.*, 502 F. Supp. 343, 345 (D.D.C. 1980).

Applying this law, the Court finds it would be inappropriate to strike Willis Roof's affirmative defenses at this time. The Trusts assert claims for breach of contract and breach of fiduciary duty, request an Order compelling Willis Roof to deliver various documents and reports, and seek recovery for future audit costs. At this stage in the litigation, it is not certain the Trusts will succeed on each of these claims despite the existence of facts that might support any of Willis Roof's affirmative defenses. Furthermore, there remain a number of important, contested facts in this case: the parties dispute whether Willis Roof made the necessary payments under the collective agreement prior to the 2004–2005 contract, whether Willis Roof gave proper notice of

its intent not to renew the 2004–2005 agreement, and whether a new contract was formed in late 2005 or early 2006. The Court finds it would be inappropriate to strike Willis Roof's affirmative defenses when so many claims and requested remedies are at issue and so many factual disputes remain.

**III.    Availability of contract defenses in trust fund recovery actions**

This Court is aware the Ninth Circuit, acknowledging congressional intent in passing ERISA, has held that employee benefit trusts are entitled to special protection against defenses asserted by employers. As noted by the Trusts, the Ninth Circuit recognizes only two defenses to trust fund collection actions: (1) that the pension contributions were illegal; and (2) that the collective bargaining agreement was void. *See, e.g.*, *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (9th Cir. 1990). In addition to referencing this black-letter law, the Trusts argue that a number of Ninth Circuit decisions support their motion to strike. Two of these cases seem factually relevant at first blush. In *Carpenters Health & Welfare Trust Fund for California v. Bla-Delco Construction*, the Ninth Circuit struck an employer's defense that the collective bargaining had been repudiated, holding that the defense merely made the contract voidable, rather than void. 8 F.3d 1365, 1369 (9th Cir. 1993). The Ninth Circuit likewise held in *Benson v. Brower's Moving & Storage, Inc.* that an employer could not raise the defense of abandonment because even if the defense were effective, it would only make the contract voidable. 907 F.2d at 314–15.

Despite some of *Bla-Delco* and *Brower's* factual similarities to this case, the Court does not accept the Trusts' argument that they or any other Ninth Circuit decision requires it to strike Willis Roof's affirmative defenses. A fundamental difference exists between the case at bar and those relied on by the Trusts. In each case cited by the Trusts, the parties entered into and subsequently disputed the meaning of a single collective bargaining agreement. *See Laborer's Health & Welfare Trust Fund for N. Ca. v. Westlake Dev.*, 53 F.3d 979 (9th Cir. 1995) (holding that unilateral repudiation under the one-employee rule rendered the collective bargaining

1  agreement void); *MacKillop v. Lowe's Market, Inc.*, 58 F.3d 1441 (9th Cir. 1995) (holding that an
2  employer's obligations to the pension funds continue while it contests majority status); *Bla-Delco*
3  *Constr. Inc.*, 8 F.3d at 1369; *Sheet Metal Workers' Int'l Ass'n v. W. Coast Sheet Metal Co.*, 954
4  F.2d 1506 (9th Cir. 1992) (holding that a collective bargaining agreement is void when a union
5  loses its majority status after an employee vote); *Benson*, 907 F.2d at 314.

6        In contrast, the case before the Court deals with a dispute regarding whether a
7  second collective bargaining agreement was ever formed.  Although they contest a number of
8  important facts, both parties recognize that an entirely new collective bargaining agreement was
9  being negotiated at the end of 2005.  (Dkt. #54, Opp'n 5; Dkt. #60, Reply 16).  This fact
10 differentiates this litigation from previous Ninth Circuit cases involving employee trust fund
11 collection disputes.  While the employers in *Bla-Delco* and *Benson* raised defenses that would
12 have rendered the collective bargaining agreement voidable, Willis Roof alleges there was no
13 meeting of the minds regarding a second collective bargaining agreement, and that as a result, a
14 new contract was never formed.  Moreover, the Ninth Circuit has held that "for an employer to be
15 obligated to make employee benefit contributions to a trust fund, there must exist a binding
16 collective bargaining agreement." *MaKillop*, 58 F.3d at 1446.  Because it would be unfair to strike
17 all of Wills Roof's affirmative defenses when it has raised factual issues regarding whether a valid
18 collective bargaining agreement was actually formed, the Trusts' motion to strike is denied.

19 **IV.   Contractual Repudiation and Illegality**

20       In addition to requesting that the Court strike all eleven of Willis Roof's affirmative
21 defenses, the Trusts seek an order declaring that Willis Roof waived the right to assert the
22 affirmative defense of contract repudiation because it did not raise the defense in its answer.
23 Willis Roof argues in response that contract repudiation is not an affirmative defense.  The Court
24 agrees with Willis Roof and finds that it is not precluded from asserting contractual repudiation at
25 trial.

26

1       The Court comes to this conclusion for a number of reasons.  First, contractual
2  repudiation is not one of the eighteen affirmative defenses outlined in Rule 8(c) of the Federal
3  Rules of Civil Procedure.  Although this list is not exhaustive, the Trusts have failed to cite any
4  authority for the proposition that contractual repudiation must be pled as an affirmative defense.
5  Moreover, the Ninth Circuit has held that "a defense which points out a defect in the plaintiff's
6  prima facie case is not an affirmative defense." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080,
7  1088 (9th Cir. 2002).  In this case, Willis Roof asserts the Trusts' collection action fails because
8  Willis Roof gave notice that it would not be renewing the contract after the 2004–2005 collective
9  bargaining agreement expired.  Willis Roof's repudiation defense therefore asserts the Trusts have
10 failed to demonstrate an essential element of their claim, namely that a valid collective bargaining
11 agreement existed after 2005.  By asking the Court to prevent Willis Roof from presenting
12 evidence of contract repudiation because it did not plead it as an affirmative defense, the Trusts
13 seek to prevent Willis Roof from defending the lawsuit based on the facts.  The Court will not
14 allow the Trusts to do so; its Motion to Strike Willis Roof's contract repudiation claim is denied.

15      The Court also notes the Trusts have requested an order establishing that Willis
16 Roof waived the affirmative defense of illegality by not asserting it in its answer.  This request is
17 highly unusual: the Trusts seek to foreclose an argument that has not been raised.  While Willis
18 Roof did not assert illegality as an affirmative defense, neither has it, at any time, sought to
19 introduce evidence that the original or the "new" collective bargaining agreements are illegal under
20 federal law.  The Trusts' motion is therefore premature.  If Willis Roof asserts an illegality
21 defense, the Court will address this issue at that time.
22 / / / /
23 / / / /
24 / / / /
25 / / / /
26 / / / /

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Plaintiff's Motion to Strike Defenses (# 46) is DENIED.

Dated: September 23, 2008.

_____
**ROGER L. HUNT**
**Chief United States District Judge**

AO 72
(Rev. 8/82)